IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES MATTISON, JR.,

    Plaintiff,

    v.

MARYLAND TRANSIT
ADMINISTRATION, MARYLAND
DEPARTMENT OF TRANSPORTATION,
*et al.*,

    Defendants.

Civil Action No. RDB-15-1627

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Charles E. Mattison, Jr. ("Plaintiff" or "Mattison") brings this action against Defendants Maryland Transit Administration, Maryland Department of Transportation ("MTA"), the State of Maryland (the "State"), and Mohammad Quraishi ("Quraishi") (collectively, "Defendants"), alleging violations of § 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*; the Americans with Disabilities Act, 42 U.S.C. §§ 12111, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008; the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't §§ 20-601, *et seq.*; and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* Plaintiff claims that, as an employee of the MTA (and thus, of the State), he suffered discrimination, retaliation, and other injuries due to his disability—diverticulitis.

Presently pending is Defendants' Motion to Dismiss the Amended Complaint (ECF No. 24). This Court held a hearing on the pending Motion on May 16, 2016. For the reasons that follow, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 24) is GRANTED IN PART and DENIED IN PART. In sum, Count I will proceed solely against the MTA and the State; Counts II and III will proceed against the MTA and the State only for injunctive relief; Count IV will proceed against the MTA and the State; and Count V is dismissed as to all Defendants. Plaintiff's claims are dismissed in their entirety as to Defendant Quraishi.[1]

## BACKGROUND

At the motion to dismiss stage, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff Charles Mattison, Jr. is currently an employee of the Maryland Transit Administration ("MTA") and was originally hired as an A Cleaner at the MTA's Bush Maintenance Division on May 20, 2011.[2] Amended Compl. ¶ 11, ECF No. 41. Less than a year later, he was promoted to C Repairman with a commensurate increase in compensation to $13.35 per hour. *Id.* ¶ 13. As a C Repairman, Plaintiff was tasked with refueling and cleaning the MTA buses. *Id.* ¶ 23. He claims that he consistently performed in a competent and satisfactory manner. *Id.* On May 20, 2012, he received another increase in compensation to $14.23 per hour (plus evening compensation). *Id.* ¶ 14.

---

[1] At the May 16 hearing, Plaintiff indicated that he would dismiss any claims against Quraishi that survive Defendants' Motion. As an employee of the MTA and the State, Quraishi would be subject to any injunctive relief ordered by this Court. Furthermore, any monetary relief would be paid by the State. Accordingly, all claims against Quraishi are dismissed.

[2] The MTA is an agency within the Maryland Department of Transportation ("MDOT"), located in Baltimore, Maryland. *Id.* ¶ 4. MDOT is itself an agency of the State of Maryland. *Id.*

Subsequently, on June 17, 2012, Mattison claims that he was wrongfully demoted to an A Cleaner at a pay rate of $11.45 per hour. *Id.* ¶ 15. After a hearing to discuss his demotion,[3] he was restored to the position of a C Repairman at the end of June 2012, with a pay rate of $14.23 per hour. *Id.* ¶ 16. He then succeeded in obtaining an A Repairman position on October 21, 2012 and was compensated at a rate of $17.09 per hour. *Id.* ¶ 17. Mattison alleges that this pay rate and the ensuing increases, however, remain less than the rate to which he is allegedly entitled as an A Repairman. *Id.* ¶¶ 17-20. Another A Repairman, Austin Breckinridge, III ("Breckinridge"), was hired nearly a year after the Plaintiff at a "top" pay rate of $27.63 per hour. *Id.* ¶ 18. Mattison's pay rate has not surpassed $20.72, which remains his current hourly wage. *Id.* ¶ 20. He alleges that he is entitled to the same compensation as Breckinridge, but has been denied that pay due to his discriminatory demotion. *Id.* ¶ 19.

Plaintiff claims that his demotion and unequal compensation stem from Defendants' discrimination and retaliation against him due to his disability. He suffers from diverticulitis, an inflammation of the digestive tract. *Id.* ¶ 25. Although Mattison has had surgery to address his condition, he experiences periodic debilitating "flare-ups" of severe pain in his abdomen, constipation, infection, and fever. *Id.* ¶ 27. During a flare-up, Plaintiff's pain is "sufficiently severe so as to prevent the ability to pursue normal life functions, . . . necessitate[ing] time off and bedrest." *Id.* ¶ 28. To prevent flare-ups, he follows a high fiber

---

[3] The MTA Office of Fair Practices ("OFP") allegedly conducted a preliminary investigation of Mattison's demotion to determine whether it stemmed from discrimination due to his disability. *Id.* ¶ 43. The OFP concluded that discrimination was not the cause of the demotion, as Plaintiff's FMLA leave was not approved until June 4, 2012. *Id.* ¶¶ 43-44. Quraishi's efforts to demote the Plaintiff, however, occurred on June 3, 2012. *Id.* ¶ 44. Plaintiff claims that this conclusion is disingenuous, as Quraishi was aware of Plaintiff's FMLA request prior to June 3, 2012 due to his being copied on emails pertaining to the request. *Id.*

diet that requires frequent use of the bathroom. *Id.* ¶ 29. Given his condition, Plaintiff applied for leave under the Family and Medical Leave Act ("FMLA") in May 2012. *Id.* ¶ 31. He alleges that the MTA, MDOT, and Quraishi, Plaintiff's supervisor, were aware and on notice of his disability and request for FMLA leave. *Id.* ¶¶ 30-31. Plaintiff's request was approved on June 4, 2012. *Id.* ¶ 33.

After Mattison filed for leave under the FMLA, he claims that Quraishi began a consistent campaign of harassment and intimidation. *Id.* ¶ 35. Prior to his request for leave, Mattison alleges that he performed in a satisfactory manner and did not receive any discipline of any kind. *Id.* ¶ 34. On June 3, 2012, Quraishi created a report reprimanding Mattison for taking over two hours for lunch. *Id.* ¶ 37. Plaintiff claims that this report was part of Quraishi's effort to demote him to an A Cleaner. *Id.* ¶¶ 37, 40. He was indeed demoted to an A Cleaner on the basis of the "patently untrue" report, an action that continues to affect his compensation today. *Id.* ¶¶ 15, 19, 42. Even further, he claims that Quraishi assigned him larger work quotas than his peers, made frequent comments about his disapproval of unplanned absences, ridiculed Mattison for his frequent bathroom use, and generally "hyper scrutinize[d]" Mattison's performance, among other alleged forms of harassment. *Id.* ¶¶ 35, 36, 38, 39, 49, 51. Plaintiff alleges that this discrimination and harassment continue to this day. As recently as February 21, 2015, Quraishi allegedly authored a false report of Plaintiff's "absence without justification." *Id.* ¶ 50.

Mattison filed the present action on June 3, 2015 solely against the MTA and the State. *See* Compl., ECF No. 1. After the MTA and the State collectively moved to dismiss (ECF No. 13), this Court allowed the Plaintiff to file an Amended Complaint (ECF No. 41),

4

<05/18/16>

in which Quraishi was named as an additional defendant. Mattison asserts five claims against the Defendants: violations of § 504 of the Rehabilitation Act ("§ 504"), 29 U.S.C. § 794 (Count I); the "self-care" provisions of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* (Count II); Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 (Count III); the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601, *et seq.* (Count IV); and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq.* (Count V). Defendants collectively moved to dismiss the Amended Complaint under Rules 12(b)(1) and (12)(b)(6) of the Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

### A.   **Motion to Dismiss Pursuant to Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.

Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Md. Dep't of Pub. Safety & Corr. Servs.*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

**B.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439

(4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true the factual allegations contained in the complaint, the court is not so constrained when the factual allegations are conclusory or devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Moreover, a court need not accept any asserted legal conclusions drawn from the proffered facts. *Iqbal*, 556 U.S. at 678. (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Although a "plaintiff need not plead the evidentiary standard for proving" her claim, she may no longer rely on the mere possibility that she could later establish her claim. *McCleary-Evans v. Maryland Department of Transportation, State Highway Administration*, 780 F.3d 582, 584 (4th Cir. 2015) (emphasis omitted) (discussing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) in light of *Twombly* and *Iqbal*). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. While the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC*, 680 F.3d at 365 (internal quotation marks omitted).

ANALYSIS

Defendants move to dismiss the Amended Complaint on numerous grounds. For the sake of clarity, this Court will address Defendants' arguments in the following order. First, this Court will consider Defendants' immunity arguments: (a) the MTA and the State are entitled to sovereign immunity under the Eleventh Amendment, U.S. Const. amend. XI, with respect to Mattison's FMLA and ADA claims for monetary relief; and (b) Quraishi is entitled to immunity with respect to Mattison's § 504, FMLA, and ADA claims. Second, this Court will address the various statute of limitations issues raised against Plaintiff's § 504, ADA, and MFEPA claims. Finally, this Court will address whether Mattison has stated a plausible hostile environment claim under either § 504 or the ADA.[4]

---

[4] Defendants assert two additional arguments: (a) the Plaintiff failed to exhaust administrative remedies for his Rehabilitation Act (Count I) and ADA (Count III) claims; and (b) none of the Defendants is an "employer" within the meaning of the Maryland Wage Payment and Collection Law. With respect to the first argument, any jurisdictional issue stemming from a failure to exhaust administrative procedures was remedied on December 9, 2015, when the United States Equal Employment Opportunity Commission issued Mattison a right-to-sue letter. Pl.'s Resp. in Opp'n Ex. 3, ECF No. 30-3; *see also Henderson v. Eastern Freight Ways, Inc.*,

8

## A. Immunity

### i. Sovereign Immunity—the MTA and the State

In moving to dismiss Counts II and III, Defendants contend that they are entitled to sovereign immunity under the Eleventh Amendment, U.S. Const. amend. XI. As such, this Court lacks subject-matter jurisdiction to adjudicate Plaintiff's claims arising under the "self-care" provision of the Family and Medical Leave Act and Title I of the Americans with Disabilities Act. This Court recognizes that "the ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000)). Given this guarantee, Congress may abrogate a state's Eleventh Amendment sovereign immunity only where "it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority." *Garrett*, 531 U.S. at 363 (quoting *Kimel*, 528 U.S. at 73).

Yet, the United States Supreme Court has concluded that while Congress certainly *intended* for the "self-care" provision of the FMLA and Title I of the ADA to apply to the states, Congress did not validly abrogate state sovereign immunity in either case. *Coleman v. Court of Appeals of Maryland*, --- U.S. ----, 132 S. Ct. 1327, 1338 (2012) (plurality) (FMLA); *Garrett*, 531 U.S. at 364, 374 (ADA). Eleventh Amendment immunity thus bars suits for money damages under the self-care provision of the FMLA and Title I of the ADA in federal court against the states, state agencies (and any sub-agencies therein), and state

---

460 F.2d 258 (4th Cir. 1972) (holding that receipt of the letter "cure[s]" whatever defect existed at the time suit was filed). With regards to the second argument, Plaintiff conceded at the May 16 hearing that neither the MTA, the State, nor Quraishi is an "employer" under the MWPCL. Accordingly, Count V is dismissed as to all Defendants.

officials. *Coleman*, 132 S. Ct. at 1338; *Garrett*, 531 U.S. at 374; see also *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (explaining that the Eleventh Amendment affords immunity to states, their respective agencies, and state officials). Although sovereign immunity bars monetary relief, a plaintiff may seek injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908). *See, e.g., Garrett*, 531 U.S. at 968 n.9; *see also Coleman*, 132 S. Ct. at 1350 (Ginsburg, J.) (dissenting) (noting the availability of injunctive relief for FMLA self-care claims).

In this case, it is undisputed that the MTA and the State of Maryland are "state entities" within the ambit of the Eleventh Amendment. Although a state may certainly waive sovereign immunity, *see, e.g., Garrett*, 531 U.S. at 363-64, Maryland has not waived its immunity from FMLA "self-care" claims or Title I ADA claims in federal court. *Coleman*, 132 S. Ct. at 1337-38 (FMLA); *McCray v. Maryland Dept. of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (ADA). Any claims for monetary relief under Counts II and III thus may not proceed against the State or the MTA.

At the May 16 hearing, Plaintiff acknowledged that sovereign immunity bars his FMLA and ADA claims against the MTA and the State for monetary relief. He argued, however, that as he also seeks various forms of injunctive relief, this Court retains subject-matter jurisdiction over these claims pursuant to *Young*. Defendants acknowledged at the hearing that injunctive relief could be available. Accordingly, Counts II and III may proceed against the MTA and the State for injunctive relief only.

    ii.    **Official and Individual Immunity—Quraishi**

Defendants next argue that Quraishi is entitled to immunity in both his official and individual capacities for Plaintiff's claims arising under § 504 of the Rehabilitation Act (Count I), the self-care provision of the FMLA (Count II), and Title I of the ADA (III). As the "Rehabilitation Act is interpreted consistently with the ADA," this Court will first consider whether Quraishi may be held liable under § 504 or the ADA. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999). This Court will then turn to Quraishi's immunity from FMLA liability.

### a. § 504 (Count I) and the ADA (Count III)

It is well established in this circuit that a supervisory employee is not liable for violations of the ADA, regardless of whether he is sued in his official or individual capacity. *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 786-87 (E.D. Va. 2003); *see also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (holding that "the ADA does not permit an action against individual defendants for retaliation conduct protected by the ADA."). Although *Baird* addressed individual liability under Title II of the ADA, its reasoning has been repeatedly extended to Title I ADA claims. *See, e.g., Shiflett v. GE Fanuc Automation Corp.*, Civ. A. No. 95-0073-C, 1996 WL 481082, at *5 (W.D. Va. July 23, 1996) (holding that only employers, and not individuals, may be held liable for violations of the ADA). Since the Rehabilitation Act is interpreted in accordance with the ADA, liability for individuals is similarly barred. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 420 (E.D. Va. 1999); *see also Ransome v. Barnhart*, Civ. A. No. CCB-03-2532, 2005 WL 1075370, at *4 (D. Md. May 5, 2005) (holding that supervisors are not individually liable under the Rehabilitation Act).

Defendant Quraishi, as a supervisory employee, is immune from liability under either Title I of the ADA or § 504 of the Rehabilitation Act. Plaintiff attempts to argue that Quraishi is an "employer" within the meaning of either statute, thereby implying that *Baird* and its progeny – including this Court's decision in *Ransome* – were wrongly decided. He contends that the exclusion of individual liability does not honor the "intent" of the statutory language. Yet, this argument has been considered and consistently rejected throughout this circuit and other circuits. *See Ransome*, 2005 WL 1075370, at *4; *Lucas v. Henrico Cty. Sch. Bd.*, 822 F. Supp. 2d 589, 613 (E.D. Va. 2011) (holding that individual persons are not considered "employers" within the meaning of the respective Acts); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (holding that individuals may not be held liable under the ADA's retaliation provision); *accord Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000). Accordingly, Counts I and III are dismissed as to Defendant Quraishi.[5]

### b. FMLA (Count II)

Defendants also contend that Quraishi is immune from liability for any claims under the self-care provision of the FMLA. The Amended Complaint does not specify whether Plaintiff asserts his claims against Quraishi in his official capacity or individual capacity. With respect to official capacity, Quraishi is accorded the same sovereign immunity given to the states under the Eleventh Amendment. *See, e.g.*, *Sadowski v. United States Postal Serv.*, 643 F. Supp. 2d 749, 752 n.2 (D. Md. 2009); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). At the May 16 hearing,

---

[5] Although *Baird* and its progeny held that an individual is immune from monetary damages, injunctive relief remains an available. Plaintiff, however, acknowledged at the May 16 hearing that any injunctive relief is directed at the State and the MTA. Those entities would presumably require Quraishi to comply with any injunctive relief ordered by this Court. As such, Counts I and III are dismissed in their entirety as applied to Quraishi.

Mattison clarified that he does not dispute that Quraishi is entitled to sovereign immunity in his official capacity. Rather, he stated that he asserts his FMLA claims against Quraishi only in his individual capacity, arguing that Quraishi is an "employer" within the meaning of the FMLA.

> Under the FMLA, the term "employer" is defined as:
>
> (i) . . . any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
> (ii) [this term] includes–
>   (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>   (II) any successor in interest of an employer;
> (iii) includes any "public agency," as defined in section 203(x) of this title; and
> (iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A). As this Court noted in *Sadowski*, 643 F. Supp. 2d at 753, there is "a nationwide split of decisional authority on this issue at both the appellate and trial levels[.]" In this circuit, the district courts are divided and the United States Court of Appeals for the Fourth Circuit has yet to address this precise issue. *Id.* This Court thus conducted an analysis of the competing interpretations of the FMLA, both within and without this circuit. *Id.* at 753-54. Ultimately, this Court held that the reasoning of the United States Court of Appeals for the Sixth Circuit in *Mitchell v. Chapman*, 343 F.3d 811 (6th Cir. 2003), *cert. denied*, 542 U.S. 937 (2004) was persuasive. *Id.* at 754.

In *Mitchell*, the Sixth Circuit concluded that individual liability under the FMLA does not extend to public agencies. *Mitchell*, 343 F.3d at 829-30. The structure of the definition of "employer" clearly distinguishes between the subsection that provides for individual liability

13

(*i.e.* subsection (ii)) from the subsection providing for public agency liability (*i.e.* subsection (iii)). *Id.* This separation reveals the independence of the public agency subsection from the individual liability subsection. *Id.*; *see also Sadowski*, 643 F. Supp. 2d at 754-55. Moreover, this Court recognized that the opposite conclusion—extending individual liability to public employees—would create the anomaly wherein a public employee may be liable under the FMLA, even if his employer, the state agency, is immune. *Sadowski*, 643 F. Supp. 2d at 755. Defendant Quraishi, as a public employee, is thus immune from liability under the FMLA.

Since *Sadwoski*, this Court has repeatedly held that public employees are not individually liable under the FMLA. *See, e.g.*, *Bosse v. Baltimore Cnty.*, 692 F. Supp. 2d 574, 583 (D. Md. 2010); *Mezu v. Morgan State Univ.*, Civ. A. No. WMN-09-2855, 2010 WL 10686063, at *12 n.15 (D. Md. March 18, 2010); *Kronk v. Carroll Cnty.*, Civ. A. No. BEL-11-0277, 2012 WL 245059, at *8 (D. Md. Jan. 25, 2012). Despite this substantial authority, Plaintiff urges this Court to reverse its holding in *Sadowski* and instead follow the reasoning of *Reed v. Maryland Department of Human Resources*, Civ. A. No. ELH-12-0472, 2013 WL 489985 (D. Md. Feb. 7, 2013). In *Reed*, Judge Hollander of this Court concluded that Congress intended to abrogate state sovereign immunity under the FMLA and did not anticipate the United States Supreme Court's contrary ruling in *Coleman*, 132 S. Ct. 1327. *Reed*, 2013 WL 489985, at *14. Congress's original intent to provide for liability remained intact, thus public employees remained "employers" within the meaning of the FMLA. *Id.* In so holding, she recognized that this interpretation created an "odd result," given the immunity of the states and their subdivisions. *Id.*

Despite the thorough analysis of *Reed*, this Court holds to its earlier ruling in *Sadowski*. Even before *Coleman*, the Fourth Circuit explained that a state "enjoys Eleventh Amendment immunity for claims brought under the FMLA, [therefore] the individual supervisors under the FMLA are protected by the same immunity." *Dorchester Cty. Det. Ctr.*, 987 F. Supp. 2d 690, 693 (D.S.C. 2013) (quoting *Lizzi v. Alexander*, 255 F.3d 128, 138 (4th Cir. 2001), *overruled on other grounds by Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003)). Further, the Supreme Court, in rejecting Congress's attempt to abrogate state sovereign immunity in *Coleman* necessarily rejected Congress's intent to hold the states (and their subdivisions) liable. *Reed* essentially recognizes that intent and elevates it above clear statutory text distinguishing between individual liability and public agencies. This Court will continue to follow *Sadowski*, *Dorchester City*, *Bosse*, *Mezu*, and *Kronk*. Quraishi is immune from liability under the FMLA. Count II is thus dismissed.[6]

**B. Statute of Limitations (Counts I, III, & IV)**

Defendants next argue that Mattison's claims under § 504, of the Rehabilitation Act, Title I of the ADA, and the Maryland Fair Employment Practices Act ("MFEPA") are untimely pursuant to the applicable statute of limitations. Turning first to Plaintiff's federal claims, this Court notes that neither the Rehabilitation Act nor the ADA includes a specific statute of limitations. As such, it "is long settled that where federal law dos not supply that information, the court will borrow the statute of limitations for the analogous state cause of action." *Davis v. Montgomery Cnty. Dep't of Transp.*, Civ. A. No. JFM-11-2637, 2012 WL 748392, at *5 (D. Md. Mar. 6, 2012) (citing *Bd. of Regents of the Univ. of the State of New York v.*

---

[6] For the reasons noted *supra* n.4, Count II is dismissed in its entirety as to Quraishi.

*Tomanio*, 446 U.S. 478, 484 (1980)); *accord A Society Without a Name v. Virginia*, 655 F.3d 342, 347-48 (4th Cir. 2011). In Maryland, this Court has consistently applied the general three-year statute of limitations to both § 504 and ADA claims. *Davis*, 2012 WL 748392, at *5; *see also Johansson v. Prince George's Cnty. Pub. Schs.*, Civ. A. No. DKC-13-2171, 2014 WL 3345054, at *4 n.6 (D. Md. Jul. 7, 2014) (citing *Jeandron v. Bd. of Regents of Univ. Sys. Of Md.*, 510 F. App'x 223, 226 (4th Cir. 2013)) (explaining that Maryland courts apply the general civil action statute of limitations of three years to ADA and Rehabilitation Act claims); *Schalk v. Associated Anesthesiology Practice*, 316 F. Supp. 2d 244, 251 (D. Md. 2004) (holding that "the statute of limitations for Rehabilitation Act claims in Maryland is three years").

In this case, Plaintiff filed the present action on June 3, 2015. Pursuant to the three-year statute of limitations, his claims are limited to those events occurring on or after June 3, 2012. Defendants, however, argue that MFEPA, as an employment discrimination statute, is the better state law analogue. MFEPA's two-year statute of limitations would bar any claims arising prior to June 3, 2013, including Mattison's alleged wrongful demotion. Md. Code Ann., State Gov't § 20-1013(a)(3). Defendants contend that this Court should depart from *Schalk*, *Davis*, and their progeny, as those cases occurred prior to the 2009 amendments to the MFEPA. The amendments, according to Defendants, reflect an effort to more closely align the MFEPA with the aims of § 504 and the ADA.

Once again, this Court follows the clear precedent applying the general three-year statute of limitations to § 504 and ADA claims. In the wake of the 2009 amendments to the MFEPA, this Court has declined to rule on this precise issue. *See McCleary-Evans v. Md. Dep't of Transp.*, Civ. A. No. ELH-12-1550, 2015 WL 1285325, at *21-25 (D. Md. Mar. 20, 2015)

16

(explaining that, as the plaintiff's claims were barred under either statute, this Court need not determine which applied); *Walker-Pittman v. Md. Dep't of Transp.*, Civ. A. No. CCB-14-202, 2015 WL 419 806, at *10 (D. Md. Jan. 29, 2015) (again declining to determine which statute applied). Maryland's general three-year statute of limitations applies to § 504 and the ADA, thus Plaintiff's claims under each statute are not time-barred.

All claims pursuant to the MFEPA, however, must fall within its two-year statute of limitations. Md. Code Ann., State Gov't § 20-1013(a)(3). Plaintiff does not dispute that the MFEPA applies a two-year statute of limitations. Rather, he argues that, as the Amended Complaint establishes a hostile work environment claim, any discriminatory incidents occurring before June 3, 2013 may be asserted under a "continuing violation" theory. *See, e.g., Rodriguez v. Cellco P'ship*, Civ. A. No. WDQ-11-3299, 2012 WL 2904809, at *4-5 (D. Md. Jul. 13, 2012). The "very nature [of hostile environment claims] involves repeated conduct," thus as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered[.]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 117 (2002). In this case, although the initial demotion occurred prior to June 3, 2013, the ongoing discriminatory allegations—for example, false write-ups, false allegations of being late or absent, micromanaging, requiring Mattison to fulfill unequal and false work quotas—occurred within the two-year limitations period. He claims that these acts, together with the 2012 allegations, establish a hostile work environment claim.

As will be discussed *infra*, Mattison has alleged sufficient facts to state a plausible hostile environment claim. Any alleged incidents that occurred prior to June 3, 2013, including his alleged wrongful demotion, are timely only to the extent that they are examples

17

of a continuing pattern of harassment. To the extent that Plaintiff attempts to recover for these incidents as discrete acts of discrimination, such efforts are time-barred.

### C. Hostile Environment Claims (Counts I & III)

Finally, Defendants contend that the Amended Complaint fails to state a plausible hostile environment claim under either § 504 of the Rehabilitation Act or Title I of the ADA. [7] Specifically, Defendants argue that Plaintiff's allegations of harassment are insufficiently pervasive and severe to establish a hostile environment claim under either statute. The "Rehabilitation Act is interpreted consistently with the ADA," thus his hostile environment claims will be considered together. *Bracey*, 55 F. Supp. 2d at 420.

To establish a hostile work environment claim under the ADA, a plaintiff must show that:

> (1) he is a qualified individual with a disability;
> (2) he was subjected to unwelcome harassment;
> (3) the harassment was based on his disability;
> (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment; and
> (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. GMC*, 247 F.3d 169, 176-77 (4th Cir. 2001). As Defendants focus their argument solely on the fourth element, this Court will do the same.

The fourth element is satisfied if "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult . . . [that is] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]"*Harris*

---

[7] Although Plaintiff does not explicitly assert a hostile environment claim under the MFEPA, a plausible claim for relief would allow this Court to consider otherwise time-barred incidents under the "continuing violation" theory. *See supra* Section C. As such, the analysis in this Section is relevant to Counts I, III, *and* IV.

*v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). When considering whether the alleged conduct was "sufficiently severe," courts look to the "totality of the circumstances." *Harris*, 510 U.S. at 23. Although *Harris* concerned a hostile work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, Title VII precedent guides the interpretation of the ADA (and thus the Rehabilitation Act). *Fox*, 247 F.3d at 176. The totality of the circumstances inquiry includes: (1) the "frequency of the discriminatory conduct;" (2) "its severity;" (3) "whether it is physically threatening or humiliating, or a mere offensive utterance;" and (4) "whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. This inquiry necessarily includes "both subjective and objective components." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) (en banc) (citing *Harris*, 510 U.S. at 21-22).

In this case, Mattison has sufficiently alleged a claim for hostile work environment. Defendants attempt to distill the Plaintiff's allegations down to three discrete acts of discrimination: the demotion and delayed promotion in 2012, a write-up in 2014, and another write-up in 2015. However, as noted *supra*, this Court may consider any incidents arising on or after June 3, 2012. Plaintiff alleges that numerous instances of harassment occurred within that time period, including, *inter alia*, the false reports, constant ridicule for his bathroom use, the imposition of unequal and false work quotas, and frequent comments about his need for FMLA leave. These allegations are merely examples of the constant abuse that Mattison allegedly suffered, and continues to suffer, at the hands of Defendants and their employees. These allegations are not merely sporadic incidents, as alleged by

Defendants, but rather allegedly reflect an ongoing campaign of harassment that has affected Mattison's performance, health, and emotional state.

At the motion to dismiss stage, this Court must accept the Plaintiff's factual allegations as true. *Aziz*, 658 F.3d at 390. If true, these allegations could establish a "workplace permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21 (internal citation omitted). Mattison has thus sufficiently pleaded a plausible hostile work environment claim under both § 504 and the ADA.[8]

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Amended Complaint (ECF No. 24) is GRANTED IN PART and DENIED IN PART. In sum, Count I will proceed solely against the MTA and the State; Counts II and III will proceed against the MTA and the State only for injunctive relief; Count IV will proceed against the MTA and the State; and Count V is dismissed as to all Defendants. Plaintiff's claims are dismissed in their entirety as to Defendant Quraishi.

A separate Order follows.

Dated: May 18, 2016

_____/s/_____
_____
Richard D. Bennett
United States District Judge

---

[8] As this Court has dismissed Counts I and III with respect to Defendant Quraishi, Plaintiff's hostile work environment claims will proceed only against Defendants MTA and the State.